IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) |
| | ) Bankr. No. 21-21894-CMB |
| ROBERT BALOGH, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| CECILIA BALOGH,[1] | ) Adversary No. 21-02115-CMB |
| | ) |
| Plaintiff, | ) Doc. No. _____ |
| | ) |
| v. | ) Related to Doc. No. 1 |
| | ) |
| ROBERT BALOGH, | ) |
| | ) |
| Debtor/Defendant. | ) |

**AMENDED COMPLAINT TO HAVE DEBT DETERMINED
NONDISCHARGEABLE PURSUANT TO SECTIONS 523(A)(2)
AND 523(A)(4) OF THE UNITED STATES BANKRUPTCY CODE AND
RULE 4007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

AND NOW, comes the plaintiff, Cecilia Balogh (the "Plaintiff") and files this Complaint (this "Complaint") seeking a determination that the amounts owed by the debtor, Robert Balogh (the "Debtor" or "Defendant") set forth on the Plaintiff's Proof of Claim, see Proof of Claim No. 3 (the "Proof of Claim") is non-dischargeable pursuant to Sections 523(a)(2) and 523(a)(4) of the United States Bankruptcy Code and Rule 4007 of the Federal Rules of Bankruptcy Procedure, and avers as follows.

**PARTIES**

1. The Plaintiff is an adult individual and resident of the Commonwealth of Pennsylvania, having a residential address of 700 Beatty Rd., Monroeville, Pennsylvania 15146.

---

[1] The Plaintiff brings this Complaint through her Power of Attorney, Rhonda Lincoln. A copy of the Power Attorney is attached hereto as Exhibit A.

{C1190551.1}

2. The Defendant is the Debtor in a case filed pursuant to Chapter 13 of the Bankruptcy Code at Bankr. No. 21-21894-CMB (the "Bankruptcy Case"), having a residential address of 915 Carrol Drive, Pittsburgh, Pennsylvania 15317.

3. On October 5, 2021, the Plaintiff filed the Proof of Claim in the Bankruptcy Case. A copy of the Proof of Claim is attached hereto as Exhibit B.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

5. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

6. Venue is appropriate in this District pursuant to 28 U.S.C. §1409.

7. The Plaintiff consents to the jurisdiction of this Court and the entry of a final order by this Court in this matter.

## FACTUAL BACKGROUND

**A.    Introduction**

8. The Plaintiff is the mother of the Defendant.

9. The Plaintiff is elderly and, at all relevant times, was found to be of "weakened intellect" by opinion (the "Orphans' Court Opinion") of the Honorable Lawrence J. O'Toole ("Judge O'Toole"), Administrative Judge of the Orphans' Court Division of the Court of Common Pleas of Allegheny County (the "Orphans' Court").

10. At all relevant times, the Plaintiff and the Defendant had a "confidential relationship."

11. By the Orphans' Court Opinion, Judge O'Toole held that, as a result of (i) the Plaintiff's weakened intellect and (ii) the confidential relationship between the Plaintiff and the

Defendant, the Defendant "exerted undue influence over [the Plaintiff] … " in taking $201,400 (the "Judgment Amount") from her.

12. As set forth more specifically below, the Debtor engaged in an intentional and fraudulent scheme to defraud the Plaintiff --- his elderly mother of weak intellect --- of the Judgment Amount.

13. In May 2018, the Plaintiff's husband (and father of the Debtor) ("Mr. Balogh") was removed from the marital residence he retained with the Plaintiff as a result of health problems, including dementia.

14. During the course of her marriage to Mr. Balogh, the Plaintiff did not work outside the home and the Plaintiff does not drive a vehicle.

15. The Plaintiff relied on Mr. Balogh for all financial matters until Mr. Balogh was removed from their marital residence.

16. In or about June 2018, Mr. Balogh was transferred to a skilled nursing facility.

17. In or about June 2018, the Plaintiff moved into the home of the Debtor.

18. In or about June 2018, the Debtor began managing the Plaintiff's financial affairs.

19. The Debtor did not manage Mr. Balogh's financial affairs.

20. In or about May 2018, after Mr. Balogh had been removed from the residence, the Plaintiff found approximately one hundred thirty six thousand dollars ($136,400) (the "Cash") and informed the Debtor that the Cash had been found.

21. On that date, the Debtor took the Cash to his residence to be kept in a safe.

**B.    The Loan**

22. Shortly after finding the Plaintiff found the Cash in the presence of the Debtor, the Debtor requested his attorney prepare a loan agreement and promissory note (collectively, the "Loan Documents"), whereby the Plaintiff would loan the Debtor $136,400.

23. The Loan Documents did not provide for a repayment schedule.

24. Rather, the Loan Documents simply purported to give the Plaintiff a life estate in the Debtor's residence.

25. The Loan Documents also provided for forgiveness of the entirety of the loan amount upon death of the Plaintiff.

26. On or about June 9, 2018, the Plaintiff was presented the Loan Documents by the Debtor and executed same.

27. At the time she executed the Loan Documents, the Plaintiff did not have separate legal representation.

28. Rather, the Debtor was the only party that explained the Loan Documents to the Plaintiff.

29. Moreover, while Mr. Balogh was alive at the time the Plaintiff signed the Loan Documents, he was not a party to the Loan Documents, nor consulted or advised of the Plaintiff's execution of the Loan Documents.

C. **The Power of Attorney**

30. On or about June 10, 2018, the Plaintiff executed a Durable Financial Power of Attorney (the "Power of Attorney"), which was prepared by the Debtor's attorney at the Debtor's direction, and which names the Debtor as the Plaintiff's agent.

31. The witnesses to the Power of Attorney were the Debtor's spouse, with whom he maintains several joint accounts and assets, and the Debtor's business partner.

    **D.**    <u>**The Real Estate**</u>

32.    On June 21, 2018, the Debtor and his spouse opened a money market account with First National Bank.

33.    On June 21, 2018, the Debtor deposited the loan funds (i.e., $136,400) from the Plaintiff into the money market account at First National Bank.

34.    On November 27, 2018, the Debtor and his spouse purchased vacant real property in North Strabane Township, Washington County (the "<u>Real Estate</u>"), for the sum of $42,600.

35.    The funds for the purchase of the Real Estate were taken from the First National Bank money market account in the amount of $51,412.48.

36.    The Real Estate was transferred to the Debtor and his spouse, as tenants by the entireties, by Special Warranty Deed.

37.    Neither the Special Warranty Deed, nor any other document, grants the Plaintiff a life estate in the Real Estate.

    **E.**    <u>**The Prudential Annuities**</u>

38.    On June 30, 2018, the Debtor opened a joint bank account with the Plaintiff at PNC Bank, on or about twenty (20) days after the Plaintiff signed the Power of Attorney.

39.    The Debtor did not deposit any of his own money into the PNC Bank account.

40.    On August 9, 2018, the Debtor deposited the sum of $6,000 into the PNC Bank account, which was a check written to Mr. Balogh from Prudential Annuities.

41.    The check was endorsed by the Debtor, despite that it was made payable to Mr. Balogh.

42.    The Debtor deposited several settlements from insurance companies made payable to Mr. Balogh into the PNC Bank account over the course of several months.

43. On November 16, 2018, the ending balance of the account was $84,162.29.

44. The Debtor wrote a check from the PNC Bank account to Wilson Architecture for $6,500, the purpose of which was the cost of architectural drawings for the Real Estate.

**F.    The Savings Bonds**

45. On August 17, 2018, the Debtor accompanied the Plaintiff to the Debtor's local branch of First National Bank, where the Debtor and his spouse held the account opened in June 2018.

46. During the meeting at First National Bank, the Plaintiff redeemed three hundred fifty nine (359) separate United States Savings Bonds which the Plaintiff owned, having a total value of approximately sixty five thousand dollars ($65,000) (collectively, the "Savings Bonds").

47. The entire proceeds of the redeemed Savings Bonds were deposited in the money market account held by the Debtor and his spouse at First National Bank.

48. The Plaintiff did not intend to gift the Savings Bonds to the Debtor. Rather, to the extent she gave the Savings Bonds to the Debtor, she meant only that he would hold them for her.

49. The Plaintiff has never had any account at First National Bank.

50. Mr. Balogh passed away on August 19, 2018.

**G.    The Vehicle**

51. In or around August 2018, the Plaintiff transferred title to her vehicle to the Debtor's spouse.

**H.    The Will**

52. Prior to Mr. Balogh's death, the Debtor arranged for his attorney to prepare a new will for the Plaintiff (the "Will").

53. The Will provided that the Debtor will receive one hundred percent (100%) of the residuary estate of the Plaintiff and names the Debtor as executor.

54. The Will removed Mr. Balogh as a beneficiary of the will.

55. In addition to her son, the Debtor, the Plaintiff has two (2) adult daughters.

### I. The Orphans' Court Opinion and Judgment

56. On June 18, 2020, Judge O'Toole entered the Orphans' Court Opinion.

57. In the Orphans' Court Opinion, Judge O'Toole made certain factual findings, *inter alia*, that at all relevant times: (i) the Plaintiff was of weak intellect; and (ii) the Plaintiff and the Debtor were in a confidential relationship.

58. In the Orphans' Court Opinion, Judge O'Toole held that the Loan Documents and changes to the Plaintiff's Will were "offensive to the Court."

59. In the Orphans' Court Order, Judge O'Toole found, based on the above stated facts, that the Debtor "exerted undue influence over [the Plaintiff]."

60. As a result of such undue influence, the Orphans' Court Opinion held, in relevant part:

   a. The Loan Documents are void;

   b. The Debtor was required to remit to Plaintiff the sum of $136,400 within sixty (60) days of the date of the Orphans' Court Opinion; and

   c. The Debtor was required to remit to the Plaintiff the total sum deposited into the First National Bank Account in the amount of $65,000, from the redemption of the US Savings Bonds on August 17, 2018, within sixty (60) days of the Orphans' Court Opinion.

61. The Debtor failed to comply with the Orphans' Court Opinion.

62. The Debtor has not paid any portion of the amount owed to the Plaintiff pursuant to the Orphans' Court Opinion.

63. On July 23, 2020, a judgment in the Judgment Amount (the "Judgment") was entered against the Debtor in the Court of Common Pleas of Allegheny County at Orphans' No. 021905069.

64. On July 28, 2020, the Judgment was entered in Washington County, Pennsylvania at No. 2020-3556.

65. After an appeal by the Debtor, the Superior Court of Pennsylvania affirmed the Orphans' Court Opinion by opinion dated July 29, 2021.

### J. The Bankruptcy Filing

66. On August 27, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.

67. The Debtor's spouse is not a joint debtor.

68. On September 7, 2021, the Debtor filed his Chapter 13 Plan of Reorganization (the "Plan").

69. The Plan does not propose to treat the Judgment as a secured claim.

70. The Real Estate is listed on the Debtor's schedules. The Debtor asserts an exemption in the entire value of the Real Estate based on his ownership of the Real Estate as tenants by the entireties with his non-debtor spouse.

### COUNT I
### Non-Dischargeability Pursuant to 11 U.S.C. §523(a)(2)(A)

71. The foregoing paragraphs are incorporated as if set forth herein.

72. The Debtor obtained money and property of the Plaintiff, i.e, the amounts owed pursuant to the Judgment, by actual fraud.

73. Upon information and belief, the Debtor knew of Mr. Balogh's inability to continue to maintain control over the Plaintiff's finances.

74. Upon information and belief, the Debtor knew of the Plaintiff's weakened intellect.

75. Beginning in May 2018, after Mr. Balogh was removed from the residence he shared with the Plaintiff, the Debtor engaged in a series of calculated transactions, while exercising undue influence over the Plaintiff, depriving her of her money and property.

76. Specifically:

   a. Within a few days after Mr. Balogh was removed from the Plaintiff's residence and the Cash was found, the Debtor presented the Loan Documents to the Plaintiff, which Loan Documents included no repayment terms, forgiveness on the death of the Plaintiff, and were prepared by the Debtor's attorney.

   b. The funds given to the Debtor by the Plaintiff pursuant to the Loan Documents were placed by the Debtor in account owned by the Debtor jointly with his spouse.

   c. The Debtor never granted the Plaintiff a life estate in the Real Estate.

   d. Within days of the Loan Documents being executed, the Debtor subsequently presented the Plaintiff with the Power of Attorney documents, making the Debtor the Plaintiff's Power of Attorney.

   e. The Power of Attorney documents were prepared by the Debtor's counsel at the Debtor's direction.

f.  Almost immediately after the execution of the Power of Attorney, the Debtor opened a joint bank account with the Plaintiff at PNC Bank.

g.  The Debtor endorsed check(s) made payable to Mr. Balogh and deposited such check(s) into the account the Debtor held jointly with the Plaintiff at PNC Bank.

h.  The Debtor wrote checks for his personal expense, i.e., architecture renderings as well as, upon information and belief, for the Debtor's personal legal fees, from the account held jointly with the Plaintiff at PNC Bank.

i.  Shortly thereafter, and only days before Mr. Balogh's passing, the Debtor accompanied the Plaintiff to his own bank, i.e. First National Bank --- and not to PNC Bank where the joint account with the Plaintiff was held --- in order for the Plaintiff to redeem the Savings Bonds.

j.  The proceeds of the redemption of the Savings Bonds were deposited by the Debtor into a joint money market account owned by the Debtor and his spouse at First National Bank.

k.  The Debtor directed his attorney to draft the Will for the Plaintiff, making the Debtor the sole beneficiary and executor, and removing Mr. Balogh--- the Plaintiff's spouse of over fifty (50) years.

l.  All of the amounts taken by the Debtor from the Plaintiff were transferred by the Debtor to property owned by the Debtor and his non-debtor spouse and tenants by the entirety.

m.  Upon information and belief, the Debtor filed this Chapter 13 case in an effort to protect assets owned as tenants by the entireties with his spouse, which

assets were procured with funds fraudulently obtained from the Plaintiff from funds taken from the Plaintiff.

77. The Debtor acted with intent to defraud the Plaintiff who, upon information and belief, the Debtor knew to be of weakened intellect.

78. As such, the Judgment should be deemed non-dischargeable as the amounts due and owing the Plaintiff were obtained by the Debtor by actual fraud.

WHEREFORE, the Plaintiff requests this Court enter an Order deeming that the Judgment excepted from discharge.

## COUNT II
### Non-Dischargeability Pursuant to 11 U.S.C. §523(a)(4)

79. The foregoing paragraphs are incorporated as if set forth herein.

80. The Debtor obtained the amounts set forth in the Judgment by fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny.

81. As set forth above, the Debtor engaged in a fraudulent scheme to take money and property from the Plaintiff, while at all times knowing that the Plaintiff was of weakened intellect, and that Mr. Balogh could no longer manage the Plaintiff's finances.

82. At all relevant times, the Debtor and the Plaintiff were in a confidential relationship.

83. Moreover, the Debtor acted as the Plaintiff's Power of Attorney.

84. At all relevant times, the Plaintiff entrusted the Judgment Amount to the Debtor.

85. As it pertains to the amounts obtained as a result of the Loan Documents, upon information and belief, the Debtor knew that the Plaintiff was unable to understand the transaction contained in the Loan Documents and proceeded to take the funds and put them into the First National Bank money market account, owned jointly by the Debtor and his spouse.

86. Upon information and belief, the Debtor timed the execution of the Loan Documents to occur before the execution of the Power of Attorney documents, in order to effectuate the Loan Documents.

87. The Debtor used the amount procured as a result of the Loan Documents for his own personal use, and not for any purpose of the Plaintiff's and without the Plaintiff's knowledge or consent.

88. As it pertains to the United States Savings Bonds owned by the Plaintiff, the Plaintiff did not gift the Savings Bonds to the Debtor, but entrusted them to the Debtor to hold for her.

89. The Debtor converted the Savings Bonds to cash, which cash was placed by the Debtor into an account held jointly by the Debtor and his spouse as tenants by the entireties, without the Plaintiff's consent or knowledge.

90. The Debtor used the proceeds from the Savings Bonds for his own personal use, and not for any purpose of the Plaintiff's.

91. Upon information and belief, the Debtor knew of the Plaintiff's weakened intellect and took her money and property without her knowledge or understanding.

92. The Debtor used the money and property he unlawfully took from the Plaintiff and used such funds for his own personal use, and not for any purpose of the Plaintiff's.

93. Upon information and belief, at all times, the Debtor acted intentionally and/or with gross recklessness in taking the money and property of the Plaintiff and converting it to his own use.

WHEREFORE, the Plaintiff requests this Court enter an Order deeming that the Judgment excepted from discharge.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CAMPBELL & LEVINE, LLC |
| Dated: December 22, 2021<br>Pittsburgh, Pennsylvania | By: /s/ *Kathryn L. Harrison*<br>Kathryn L. Harrison, Esquire<br>PA I.D. No. 209601<br>Email: kharrison@camlev.com<br>310 Grant Street, Suite 1700<br>Pittsburgh, PA 15219<br>T: 412-261-0310<br>F: 412-261-5066<br>*Counsel for the Plaintiff* |